# United States Court of Appeals
# for the Fifth Circuit

No. 23-30193

In re City of New Orleans,

                        *Petitioner.*

_____

Petition for a Writ of Mandamus
to the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-1924

_____

UNPUBLISHED ORDER

Before King, Jones, and Smith, *Circuit Judges*.

Per Curiam:

  The United States sued the City of New Orleans in 2012 regarding various policies and practices of the New Orleans Police Department ("NOPD"). The district court approved a Consent Decree in 2013. Pending in the district court is the city's motion to terminate the Consent Decree.[1]

  On April 6, 2023, the city filed a petition for writ of mandamus. In an initial section entitled "RELIEF SOUGHT," the city objected to a "public hearing" (in the court's words) that the court, on April 3, had scheduled for April 12, which order the city described as an "injunction mandating that various city officials appear in its courtroom for what amounts to a press

---

[1] *See generally United States v. City of New Orleans*, 731 F.3d 434 (5th Cir. 2013).

conference." The petition "asks [this] Court to issue a writ of mandamus directing the district court to cancel or modify the hearing so that city officials are not required to prepare, attend, or make statements to the press."

In its two-page order, the court describes the subject of the "public hearing" generally as follows regarding the Consent Decree:

> [T]he NOPD has expanded its Alternative Police Response ["APR"] Section and increased its resources through more reliance on co-responders. The success of the [APR] Section and collaboration with co-responders is dependent on the public's awareness of these initiatives.

The district court justifies the hearing in one sentence, as follows:

> The Consent Decree requires in paragraph 12 that the [city] is responsible for providing necessary support and resources to [NOPD] to enable [NOPD] to fulfill its obligations under the Consent Decree.

Paragraph 12, similarly, reads, in its entirely, as follows:

> The City is responsible for providing necessary support and resources to NOPD to enable NOPD to fulfill its obligations under [the Consent] Agreement.

The hearing is to take place in the courtroom of the district judge *a quo*.[2]

At this court's request, the United States filed a comprehensive response on short notice. That response is both resourceful and helpful.[3] In short, the United States—without explicitly saying so—can be read to suggest that the order and consequent hearing may need to be modified to fit

---

[2] The order does not specify whether the judge will be present or whether she will preside. The United States, however, represents that "the hearing . . . is also set to take place inside a federal courtroom with a federal judge presiding."

[3] We granted the State of Louisiana leave to file a brief as *amicus curiae* in support of mandamus.

within what is authorized by the Consent Agreement.

First, the United States notes that the district judge had no opportunity to respond to the city's concerns or to the United States's response. This panel invited the district judge to respond but did not require it. None has been received.

The United States posits that "[r]emand is therefore appropriate to give the district court an opportunity to modify its hearing order in the first instance after hearing from both parties [, which could] propos[e] any agreed-upon modifications to the order for the district court to consider." The United States continues, "[T]he district court may consider modifying the hearing order in ways that would render mandamus unnecessary and the parties may be able to develop a joint proposal for the hearing . . . ."

\* \* \* \* \*

The posture of the United States, in its response to the mandamus petition, is well taken. Although this administrative panel has the option either to grant or to deny the petition with finality, we can also choose to do neither at this time.

Nothing in the short and plain one-sentence text of paragraph 12 of the Consent Decree, on which the district court wholly relies, authorizes the subject order setting the public hearing. That satisfies the first prong of the mandamus test. We need not address the remaining prongs, however, as there is ample precedent for refraining, given the options recommended by the United States.

In *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504–05 (5th Cir. 2019), we entered an administrative stay, opined on the propriety of the questioned order, and stated that "the district court should revisit its decision in light of this opinion . . . ." "To facilitate that review," we extended the stay "for

thirty days from the date of this opinion." *Id.* at 505.[4]

We follow that template now. The petition for writ of mandamus is DENIED without prejudice. The administrative stay is EXTENDED for thirty days from the date hereof, to give the conscientious district judge an opportunity to reconsider her order after adequate opportunity to confer with

---

[4] In *JPMorgan*, 916 F.3d at 504 n.24, we explained this option at greater length:

This follows the procedure we utilized in [*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348 (5th Cir. 2017)]. There, although denying the petition for writ of mandamus, we nonetheless "request[ed] the district court to vacate its ruling." *Id.* We explained this approach as follows:

In anticipation of any suggestion that a court of appeals exceeds its proper role in ruling on pending issues but nonetheless denying mandamus, we note that this court has routinely held, sometimes in published opinions, that a district court erred, despite stopping short of issuing a writ of mandamus. *E.g., In re Dean*, 527 F.3d 391 (5th Cir. 2008) (per curiam) (holding that district court had "violated" a federal statute); *In re United States*, No. 07-40629, 2007 WL 27781, 2007 U.S. App. LEXIS 30793 (5th Cir. July 19, 2007) (per curiam) (holding that district court "abused its discretion"); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006) (holding that district court "erred in declaring that no law enforcement privilege exists"); *In re Kleberg Cty.*, 86 F. App'x 29 (5th Cir. 2004) (holding that district court "impermissibly violated the County's privilege not to reveal its confidential informants" and ran "afoul of controlling law"); *In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003) (holding that district court erred in compelling production of allegedly privileged documents); *In re Stone*, 986 F.2d 898 (5th Cir. 1993) (per curiam) (holding that district court abused its discretion in ordering who must be present at settlement conference); *In re Office of Thrift Supervision*, 948 F.2d 910 (5th Cir. 1991) (holding that district court erred as a matter of law in attempting to transfer the proceeding, but noting that petitioner "has not made an adequate showing TTT of harm that cannot be undone if the order is reversed on appeal").

*Id.* at 347 n.4.

the parties as recommended by the United States.

We express no hint on what sort of order or public proceeding might be appropriate. Nor do we opine on the underlying legal and factual questions regarding the Consent Decree.